UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ricky Lee Lidel, | Case No. 22-cv-2918 (KMM/LIB) |
| Plaintiff, | |
| v. | **ORDER AND** |
| | **REPORT AND RECOMMENDATION** |
| Guy Bosch, et al., | |
| Defendants. | |

This matter comes before the undersigned United States Magistrate Judge, pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636, upon Plaintiff Ricky Lee Lidel's various filings. Finding no hearing necessary, the Court issues the present Order and Report and Recommendation.

**I.   Background**

The Court received Plaintiff's present Complaint on November 16, 2022. (See Complaint [Docket No. 1]). Plaintiff did not pay the filing fee for this action; instead, he filed an application to proceed in forma pauperis. (IFP Application [Docket No. 2]). Plaintiff is a prisoner currently held at the Minnesota Correctional Facility in Faribault, Minnesota ("MCF-Faribault"). (See Compl. [Docket No. 1] at 11).[1] Defendants are various individuals associated with Minnesota prison system, including Guy Bosch, Jesse Pugh, and Brian Collins who are the wardens of, respectively, MCF-Stillwater, MCF–Rush City, and MCF–Moose Lake. (See Id. at 2–8). Defendant Paul Schnell is the commissioner of Minnesota's Department of Corrections. (See Id. at 4.) Plaintiff identifies Defendant Kathy Reid as a "health services administrator" at MCF-

---

[1] Citations to filed materials use the pagination provided by the Court's CM/ECF filing system.

Stillwater; Deb Zinken and "Dr. Fornal" appear to be doctors affiliated with a behavioral-services unit at MCF–Rush City. (See Id. at 3, 7–8) (capitalization amended).

The Complaint's allegations concern at least three distinct matters, which the Court will discuss in separate sections.[2]

### 1.   Allegations concerning diabetes, cancer, and Covid-19

Plaintiff alleges that in June 2019—when, as the Court understands it, he resided at MCF–Rush City—he was "restarted on . . . Zyprexa (olanzapine)" even "though he had no psychotic behaviors" making that prescription necessary. (Addendum [Docket No. 1-1] at 1). Plaintiff states that Zyprexa is "known to cause diabetes" in 10 percent of users, and prison authorities prescribed it to him merely to "help him get to sleep." (Id.).

In February 2020, authorities transferred Plaintiff from MCF–Rush City to Fairview Hospital "for emergency admission for onset of [d]iabetic ketoacidosis"; Plaintiff now claims his Zyprexa use caused this outcome. (Id.) According to Plaintiff, while at Fairview, tests (and later a biopsy) revealed that he also has non-Hodgkin lymphoma—and specifically, follicular lymphoma. (See Id. at 2). Plaintiff asserts that "[r]ecent scientific evidence" suggests that some types of diabetes can cause non-Hodgkin lymphoma, and states that non-Hodgkin lymphoma is a "fatal" disease with "no cure." (Id.).[3]

---

[2] Attached to the Complaint are over seventy pages of exhibits. (See Exhibits [Docket No. 1-2]). To the extent that Plaintiff wants the Court to review this material to develop allegations and/or claims for Plaintiff, the Court declines the invitation—it is a litigant's responsibility to draft his or her complaint. See, e.g., Jackson v. FindJodi.com, Inc., No. 21-cv-1777 (SRN/DTS), 2022 WL 336832, at *4 (D. Minn. Feb. 4, 2022) (citing Murrin v. Avidigm Capital Grp., Inc., No. 07-cv-1295 (PJS/RLE), 2008 WL 11463468, at *10 (D. Minn. Sept. 5, 2008)), aff'd, 2022 WL 4455209 (8th Cir. June 1, 2022).

[3] Plaintiff also claims that "an addendum" to his admission documents at Fairview falsely claimed that, before his admission, Plaintiff had swallowed several "Tide Pods filled with drugs." (Addendum [Docket No. 1-1] at 3). Plaintiff suggests that this was a deliberate lie to potentially cover up Defendants' misconduct had he gone into a diabetic coma and not recovered. (See Id.).

In December 2021, authorities transferred Plaintiff to MCF-Stillwater. (See Id. at 4). Where Plaintiff alleges he was initially placed "on medical lockdown in administrative segregation" because of Covid-19, but at some later point, he "was placed into [g]eneral [p]opulation without regard to the lethality of Covid-19 complications" for someone in Plaintiff's condition (i.e., someone with diabetes and cancer). (Id.). Plaintiff claims that he asked for a medical release from prison, but that this was unsuccessful. (See Id.).

Plaintiff further alleges that in September 2022, MCF-Stillwater went "on 'Red Alert' [s]tatus" because of Covid-19 infections at the facility. (Id. at 5). Plaintiff claims that he wrote to Defendant Reid, asking to be moved to medical quarantine, but no move occurred. (See Id.). Plaintiff alleges that instead, Reid took steps to reduce ventilation in relevant portions of MCF-Stillwater, causing "the perfect breeding ground [for] Covid." (Id.). Plaintiff himself tested positive for Covid-19 on September 15, 2022; he claims that Reid's "indifference callously endangered" him. (Id.).[4]

### 2. Allegations concerning toe injury

In addition to his allegations about diabetes, cancer, and Covid-19, Plaintiff also raises a separate medical issue. In August 2022, Plaintiff alleges, he filed a "medical grievance" about a broken toe from which he has suffered since June 2022. (Id. at 5). Nevertheless, he claims, he has received "no medical remedy." (Id.).

### 3. Allegations concerning mailroom policies

The Complaint also raises concerns about various prison-mailroom policies. (See Id. at 7). Plaintiff alleges that authorities have imposed a "new mailroom policy" under which prisoners do

---

[4] Plaintiff states that he has looked into Defendant Reid's background and asserts that she lacks a medical degree. (See Id. at 6). Nevertheless, he asserts, she "makes medical decisions reserved for licensed medical [doctors]," putting people (including Plaintiff) at risk. (Id.).

not get notice when their "mail is rejected" and "get no reasonable opportunity to protest." (Id.). Plaintiff also asserts that mailroom staff destroy photos sent in the mail, and also copy and then destroy original copies of mail with no "prisoner recourse" (prisoners apparently only get copies). (Id.). Mail receipt is apparently often delayed for "3 to 4 weeks." (Id.).[5]

    **4.    Request for relief**

The Complaint's request for relief asks that "the State of Minnesota compensate [Plaintiff's] estate in the amount of [$20 million]," and apparently separately requests "compensatory damages for medical malpractice." (Compl. [Docket No. 1] at 13). Plaintiff also seeks "[i]njunctive relief in all claims" and wants the State to "stop . . . negligent medical practice[s]." (Id.).

**II.    Plaintiff's Contemporaneous and Subsequent Motions.**

Plaintiff has made a variety of other filings either along with the Complaint or in the subsequent time period. For present purposes, these other filings can be briefly described as follows:

- Plaintiff's IFP Application, filed with the Complaint, asks the Court to let Plaintiff proceed in forma pauperis ("IFP") in this action. (See IFP Appl. [Docket No. 2])

- Plaintiff's Motion to Release Ill Prisoner (hereinafter "Relief Motion"), [Docket No. 3], also filed with the Complaint, repeats the Complaint's various requests for relief, but also asks the Court to order Plaintiff's release from state prison.

- Plaintiff's first Motion to Amend, [Docket No. 7], received on December 15, 2022, states that Plaintiff wants to sue Defendants for "negligence and wanton deliberate indifference" rather than for medical malpractice. The Court thus construes this as

---

[5] It is unclear from the Complaint whether the policies alleged apply only at Plaintiff's current MCF location or instead are statewide policies. (See Id. at 7).

4

a motion to amend the Complaint. The filing also asks the Court to "add" certain "addendums to [the] case." (Id. at 7).

- The Court received Plaintiff's Motion for Addition to Case File Exhibits, [Docket No. 12], on January 12, 2023. This Motion asks the Court to add several more pages of "exhibits to [the] case file." (Id.).

- On January 19, 2023, the Court received Plaintiff's Motion to Appoint Counsel, [Docket No. 19], which asks the Court to appoint Plaintiff counsel for this civil action.

- On January 30, 2023, the Court received Plaintiff's Motion to Serve. [Docket No. 22]. This Motion asks the Court to have the "summons and complaint" served on the Defendants in this case.

- On February 2, 2023, Plaintiff filed his second Motion to Amend. [Docket No. 26]. This filing asks the Court to "delete [the] request for [r]elease [in the] Complaint,"[6] and to send Plaintiff a "full copy of all case documents and [the] price needed to be paid for said documents." (See Second Motion to Amend [Docket No. 26] at 1) (emphasis in original).

- On February 8, 2023, the Court received Plaintiff's Motion for Temporary and Permanent Injunction. [Docket No. 29]. Here Plaintiff asks the Court for a "[t]emporary and [p]ermanent injunction" to "compel Warden T. Beltz"—MCF-Faribault's warden—and other MCF-Faribault staff "to cease and stop all acts causing continued pain, hardship, and imminent harm against [Plaintiff]." (Motion [Docket No. 29] at 1). The caption on this document lists at least three

---

[6] As noted above, this request for release actually appears in the Motion to Release Ill Prisoner, not in the Complaint.

5

- Defendants—Beltz, William Mays, and "Centurian of Minnesota"—who were previously <u>not</u> listed on any pleadings filed with the Court, so the Court construes the Motion for Temporary and Permanent Injunction as also presenting a third request to Amend the Complaint. (<u>Id.</u>).

- On February 10, 2023, the Court received Plaintiff's Motion to "Dismiss Memorandum in Opposition and Accept Amendment." [Docket No. 33]. This filing asks the Court to "accept motion to amend complaint (26) and dismiss objection to same." (Mot. [Docket No. 33] at 1).

**III.   Analysis**

The Court starts its analysis with the original Complaint itself. As it stands, the Complaint—regardless of whether or not one considers Plaintiff's various proposed amendments—cannot proceed "as is" for at least two reasons.

First, it suffers from significant misjoinder problems. Under Federal Rule of Civil Procedure 18(a), "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." This permissive rule lets a plaintiff "join as many claims as he or she has against an opposing party." <u>Headley v. Bacon</u>, 828 F.2d 1272, 1275 (8th Cir. 1987); <u>see also</u> 6A Mary Kay Kane, Federal Practice and Procedure § 1582 (3d ed. Westlaw, updated April 2022) ("FPP") ("Rule 18(a) . . . permit[s] a party to join as many original claims . . . as the party has against an opposing party.").

But once a plaintiff goes further and joins multiple defendants in a single action—as Plaintiff does here —he or she must also satisfy Rule 20(a)(2). Under this Rule, "[p]ersons . . . may be joined in one action as defendants if . . . (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction,

occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." This is "broad language," but as a leading treatise explains, "a plaintiff may join multiple defendants in a single action only if the plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." 7 FPP § 1655 (emphasis added); see, e.g., George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . .").[7]

Rule 20(a)(2) is especially important for prisoner initiated civil litigation. Putting unrelated defendants into different actions avoids the "morass produced by multi-claim, multi-defendant suits . . . ." Owens v. Hensley, 635 F.3d 950, 952 (7th Cir. 2011) (quoting George, 507 F.3d at 607 (internal quotation marks omitted)); see, e.g., Shortymacknifisent, 2022 WL 1443984, at *2 (quoting Owens). Furthermore, the Prison Litigation Reform Act ("PLRA") requires that prisoners pay filing fees for all civil actions, and if a prisoner files too many meritless suits (or appeals), he or she is generally barred from proceeding *in forma pauperis*. As a result, a prisoner who might otherwise have to pay multiple lawsuits' filing fees might try to avoid that outcome by improperly combining several unrelated claims against various unrelated defendants into only one action.

---

[7] The U.S. Court of Appeals for the Eighth Circuit has not specifically cited George, but numerous Eighth Circuit district courts have. See, e.g., Dudley v. Warren, No. 22-cv-3188 (JWL/JPO), 2023 WL 346046, at *2 (D. Kan. Jan. 20, 2023) (quoting George); Shultz v. Stoddard Cnty. Jail, No. 1:22-cv-0076 (DDN), 2022 WL 4130860, at *4 (E.D. Mo. Sept. 12, 2022) (same); Lightfeather v. Green, No. 8:21-cv-0208, 2021 WL 3930274, at *3 (D. Neb. Sept. 2, 2021); Ward v. Kelley, No. 5:16-cv-0119 (KGB/JJV), 2017 WL 2633395, at *2 (E.D. Ark. June 19, 2017), aff'd, No. 17-3012, 2018 WL 11441638 (8th Cir. Mar. 26, 2018). Furthermore, courts in this District have repeatedly relied on George's misjoinder reasoning. See, e.g., Shortymacknifisent v. Beltz, No. 22-cv-0766 (DSD/BRT), 2022 WL 1443984, at *2 (D. Minn. May 6, 2022), report and recommendation adopted in relevant part, 2022 WL 17546558 (D. Minn. May 31, 2022); Broussard v. Hollenhorst, No. 22-cv-0342 (SRN/ECW), 2022 WL 748470, at *3 (D. Minn. Mar. 11, 2022), aff'd, No. 22-1774, 2022 WL 10557060 (8th Cir. Sept. 9, 2022); Mays v. Sherburne Cnty. Jail, No. 20-cv-506 (PAM/KMM), 2020 WL 4218806, at *2 (D. Minn. July 23, 2020).

As discussed above, the present Complaint contains claims concerning at least three different subject-matters. Under Rule 18(a), the suit could proceed if Plaintiff had named only one defendant and that defendant were truly involved in all of Plaintiff's numerous alleged claims. But the Complaint here plainly does not do this. Here where the Complaint names multiple defendants in several unrelated claims, the Complaint becomes subject to Rule 20(a)(2), and the Complaint fails to comply.

Furthermore, even if the Court ignored the Complaint's multiple defendant misjoinder problems—and it will not—the Court would still dismiss almost all of this Complaint as frivolous. A case is frivolous when "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); see, e.g., Williams v. Hopkins, 130 F.3d 333, 335 (8th Cir. 1997) (making same point (quoting Cokeley v. Endell, 27 F.3d 331, 332 (8th Cir. 1994))). This District's courts have regularly held that when a complaint fails to allege what a named defendant did that plausibly causes liability, the pleading lacks an arguable basis in fact—so is frivolous—as to that defendant. See, e.g., Johnson v. MCF–Moose Lake, No. 22-cv-1976 (JRT/DTS), 2022 WL 17569089, at *2 (D. Minn. Oct. 4, 2022) (citing cases), report and recommendation adopted, 2022 WL 17555494 (D. Minn. Dec. 9, 2022); Crabtree v. Roseau Cnty. Sheriff Off., No. 22-cv-0093 (WMW/HB), 2022 WL 1523691, at *2 (D. Minn. Mar. 17, 2022) (same), report and recommendation adopted, 2022 WL 1522571 (D. Minn. May 13, 2022).

By this Court's review of the Complaint, there are substantive allegations about only one named Defendant—Reid. (See Addendum [Docket No. 1-1] at 5–6). The upshot is that misjoinder problems aside, the Complaint as presently drafted is also frivolous as to all of the other named Defendants.

8

Rather than dismiss this action now, the Court will give Plaintiff a chance to submit an actual amended complaint that avoids the Complaint's misjoinder problems. This amended pleading is due within thirty (30) days of the date of this Order, and it must meet all of the following requirements.

First, the amended complaint must be an entirely new pleading. It may not be a supplement or addition to the current Complaint; it must stand on its own. Second, the required amended complaint must include a complete and coherent description of the historical facts on which Plaintiff's lawsuit is based. Third, the amended complaint must clearly identify each defendant that Plaintiff intends to sue, describe what he, she, or it did (or failed to do) that was unlawful, and explain how his, her, or its action (or inaction) violated Plaintiff's rights or applicable law. Lastly, if Plaintiff names more than one defendant in the amended complaint, he must follow the requirements set out above for joining multiple named defendants in one action.

If the amended complaint does not comply with the foregoing directions—or if Plaintiff does not timely submit an amended complaint—the Court will thereafter sua sponte recommend dismissing this action. See Fed. R. Civ. P. 41(b); Olson v. Little, No. 92-2123, 1992 WL 309847 (8th Cir. Oct. 27, 1992) (affirming sua sponte dismissal for violation of Federal Rules of Civil Procedure).

This leaves Plaintiff's various pending motions. The Court will refrain from ruling on the IFP Application, [Docket No. 2], and the Motion to Appoint Counsel, [Docket No. 19], until Plaintiff submits an amended complaint.

Plaintiff has already asked the Court (in Docket No. 26) to disregard the Motion to Release Ill Prisoner, [Docket No. 3], to the extent that it seeks Plaintiff's immediate release from state prison. The Court therefore recommends the Motion to Release, [Docket No. 3], be denied as moot.

As for Plaintiff's first Motion to Amend, [Docket No. 7], the Court will deny this as moot to the extent that Plaintiff seeks to change the allegations, claims, or named defendants in his Complaint. Plaintiff can introduce this amendment into his amended complaint required by the Order above if he wishes subject to meeting the requirements set forth in the Order above. As for this filing's request about addendums, the Court grants the motion to the extent that the submitted materials now appear on this case's CM/ECF docket and are accessible to the Court. To the extent the first Motion to Amend seeks anything more, it is denied.

Similarly, the Court grants Plaintiff's Motion for Addition to Case File Exhibits, [Docket No. 12], to the extent that the materials now appear on this case's CM/ECF docket and are accessible to the Court. Plaintiff's Motion for Addition to Case File Exhibits, [Docket No. 12], is denied in all other respects.

With respect to the Motion for Service, [Docket No. 22], the Court will at this time deny this Motion without prejudice. If Plaintiff submits his amended complaint as required, the Court will screen that amended complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, and only then will the Court determine what service-related steps are necessary or required.

As for the Plaintiff's second Motion to Amend, [Docket No. 26], the Court will deny this as moot to the extent that Plaintiff seeks to change this action to eliminate his request for release. Plaintiff is not required to keep any of his current purported claims in the amended complaint that is to be filed by Plaintiff pursuant to the Order above. As for the request for a copy of the case file, the Court will grant this request for items filed by the Court, but the Court will deny it for materials submitted by Plaintiff himself. See, e.g., Duwenhoegger v. Miles, No. 17-cv-1432 (PJS/TNL),

2017 WL 2799155, at *1 (D. Minn. June 28, 2017) ("An IFP litigant is not entitled to free copies of documents that he submitted to the Court.") (citing cases).[8]

As for Plaintiff's request for injunctive relief, the Court recommends that Plaintiff's Motion for Temporary and Permanent Injunction, [Docket No. 29], be denied without prejudice at this time. Putting aside any procedural irregularities with this filing, see Fed. R. Civ. P. 65(a)–(b), Plaintiff's documents in support of the Motion fail to address at least three of the four so-called "Dataphase factors" that a District Court must consider when ruling on motions for temporary restraining orders and/or preliminary injunctions. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc) (listing factors).

Finally, the Court denies as moot Plaintiff's Motion to Dismiss Memorandum in Opposition and Accept Amendment. [Docket No. 33]. The motion is difficult to understand, but it appears that Plaintiff wants the Court to disregard a memorandum that he submitted alongside his own second Motion to Amend; he suggests that he mistakenly called that memorandum one "in opposition to" said Motion. As noted above, however, Plaintiff is being ordered to file an entirely new amended complaint; thus, the Court need not address the Plaintiff's Motion to Dismiss Memorandum in Opposition and Accept Amendment or its impact on his previously filed second Motion to Amend.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

---

[8] The Court will direct the Clerk of Court to send Plaintiff information about the price needed to be paid for copies of any filed documents.

1. As soon as possible and in any event by no later than thirty days from the date of this Order, Plaintiff must submit an amended pleading that complies with this Order;

2. If Plaintiff fails to comply with this Court's Order in the time permitted, the Court will sua sponte recommend dismissing this matter without prejudice for failure to prosecute and/or failure to comply with the Federal Rules of Civil Procedure;

3. Plaintiff's first Motion to Amend, [Docket No. 7], is **DENIED as moot**;

4. Plaintiff's Motion for Addition to Case File Exhibits, [Docket No. 12], is **GRANTED in part** and **DENIED in part**, as set forth above;

5. Plaintiff's Motion for Service, [Docket No. 22], is **DENIED without prejudice**;

6. Plaintiff's second Motion to Amend, [Docket No. 26], is **DENIED in part as moot** and **GRANTED in part**, as set forth above; and

7. Plaintiff's Motion to Dismiss Memorandum in Opposition and Accept Amendment, [Docket No. 33], is **DENIED as moot**.

Further, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion to Release Ill Prisoner, [Docket No. 3], be **DENIED without prejudice** to the extent it seeks Plaintiff's immediate release from state prison; and

2. Plaintiff's Motion for "Temporary and Permanent Injunction," [Docket No. 29], be **DENIED without prejudice**.

Dated: February 28, 2023         s/Leo I. Brisbois
                                 Hon. Leo I. Brisbois
                                 United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).